## OSBORN v. LOGUS.

[37 Pac. 456; 38 Pac. 190; 42 Pac. 997.]

1. ADVERSE PARTIES IN MECHANICS' LIEN CASES — CODE, § 537.— In mechanic's lien cases all the lien claimants are "adverse" to each other, within the meaning of section 537, Hill's Code, and must be served with the notice of appeal: *The Victorian*, 24 Or. 121, approved and followed.

2. SERVICE OF NOTICE OF APPEAL — CODE, § 537.— The question of who are "adverse parties" necessary to be served with the notice of appeal must be determined by the conditions existing when the appeal is taken, and all who are then "adverse" must be served: *Moody v. Miller*, 24 Or. 179, approved and followed.

3. MECHANICS' LIEN CASES — ADVERSE PARTIES.— In a mechanics' lien case the contractor is not an "adverse party" and need not be served with the notice of appeal, where he has not been served with summons and has not appeared, though named in the pleadings as a defendant.

4. RIGHT TO SECOND APPEAL.— An attempt to take an appeal, which in consequence of an irregularity is not perfected, does not take away the right to another appeal.

5. MECHANICS' LIENS — PARTIES — PLEADING — CODE, §§ 67, 71.— In a mechanic's lien foreclosure the contractor is not an absolutely indispensable party — he ought to be brought in if he can be served, but the suit can proceed without him, though, of course, if he is not served he is not bound by the result. Not being an indispensable party, the objection of defect of parties must be made by demurrer or answer, otherwise it will be deemed waived: Code, §§ 67, 71.

6. VARIANCE — MECHANICS' LIENS — NAME OF CONTRACTOR.— A difference between the name of the firms of contractors as alleged in the complaint for the foreclosure of a mechanics' lien, and as disclosed by the contract, does not constitute a fatal variance where there is no question as to the identity of the two firms, and it is clearly apparent that the owner, who alone is contesting the lien, has not been misled in any respect by the difference.

7. NOTICE OF LIEN — NAME OF PERSON OBTAINING MATERIALS — CODE, § 3673.— The naming in a claim of lien, in good faith, of the parties

to whom material was furnished as "J. W. Holm and Brother," while the contract between the owner and contractor was signed "C. N. Holmes and Company," is immaterial, it not appearing that the owner was misled.

8. LIEN NOTICE — CONTRACTUAL RELATION BETWEEN CLAIMANT AND PROP-ERTY-OWNER — CODE, §§ 3669, 3673. — A claim of lien for material or labor furnished a contractor filed under section 3673 of Hill's Code, requiring the claim to contain a true statement of the demand, with the name of the owner or reputed owner, and that of the person by whom the claimant was employed, or to whom he furnished the materials, need not state the contractual relations existing between the claimant and the owner, as the relation is in effect established by section 3669, which provides that the contractor shall be held the agent of the owner for the purposes of the act: *Rankin* v. *Malarkey*, 23 Or. 593; *Curtis* v. *Sestanovich*, 26 Or. 107; *Willamette Manufacturing Company* v. *McLeod*, 27 Or. 272, overruled on this point.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

For appellant there was a brief by *Messrs. Snow and McCamant,* with oral arguments by *Mr. Wallace McCamant.*

For respondent there was a brief by *Messrs. Hume and Hall* and *Charles H. Carey,* with oral arguments by *Messrs. Charles H. Carey* and *John H. Hall.*

Decided July 30, 1894.
[37 Pac. 456.]

ON FIRST MOTION TO DISMISS APPEAL.

PER CURIAM.  1.  This is a motion to dismiss an appeal.  A decree having been rendered dismissing plaintiff's complaint in a suit to foreclose a mechanic's lien, wherein like liens of other claimants upon the same property were foreclosed, the plaintiff attempted to appeal by serving the notice thereof upon the owner of such property only.  Appeals are taken by causing a notice to be served upon the adverse party, and filing the original, with proof of service indorsed

thereon, with the clerk: Hill's Code, § 537. An adverse party is one whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by the appeal: *The Victorian,* 24 Or. 121 (32 Pac. 1040). If the decree should be reversed, and one entered here foreclosing plaintiff's alleged lien, the interests of the other lien claimants would necessarily be in conflict with such decree, in case the property sought to be charged with the lien was upon a sale thereof insufficient to pay the whole amount decreed against it: Hill's Code, § 3677. In such case they would be compelled to share *pro rata* with the plaintiff, and hence the other lien claimants were or might thus become adverse parties.

2. But in order to show that the other claimants would not in fact be affected by such a decree, the appellant filed affidavits, and a copy of the decree with marginal indorsements thereon, from which it appears that the amounts awarded to the several lien claimants have been paid. The proofs, however, are silent as to when these payments were made, except as to one of them, the acknowledgment of which was entered on the margin of the decree after the notice of appeal was served. Jurisdiction must be determined from the conditions existing when the appeal was taken and could be acquired in this case only by service of the notice of appeal upon all the adverse parties: *Hamilton* v. *Blair,* 23 Or. 64 (31 Pac. 197); *Moody* v. *Miller,* 24 Or. 179 (33 Pac. 402); and plaintiff having failed to serve the other lien claimants with such notice the appeal must be dismissed.

DISMISSED.

Decided November 19, 1894.
[38 Pac. 190.]

## ON SECOND MOTION TO DISMISS APPEAL.

PER CURIAM.  A former appeal, or attempted appeal, in this case, having been dismissed for want of service upon all the adverse parties, the plaintiff has taken and perfected another appeal, which the defendant now moves to dismiss on the grounds (1) that Messrs. Holm and Brother, the contractors to whom plaintiff furnished the material for which the lien is' claimed, were not served with notice of the appeal; and (2) that plaintiff's right to an appeal has been exhausted.

3.  The contractors to whom plaintiff furnished the material referred to in the complaint, although named as defendants therein, were not served with summons and did not appear in the court below, nor have they been served with the notice of appeal.  The contention for defendants is that they are adverse parties within the meaning of the statute.  An adverse party is defined by this court to be one "whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by the appeal": *The Victorian,* 24 Or. 121 (32 Pac. 1040).  Within this rule, the contractors are clearly not adverse parties to this appeal, indeed they are not parties to the decree appealed from at all, and cannot therefore be in any way affected by the modification or reversal thereof.

4.  Where an appellant has taken and perfected an appeal his right is exhausted, and he cannot after-

28 OR.—22.

wards take another in the same cause, but where he merely attempts to appeal but in consequence of some irregularity the appeal is not perfected the right to appeal still remains: *McCarty* v. *Wintler*, 17 Or. 391; *Nestucca Wagon Road Company* v. *Landingham*, 24 Or. 439. An appeal is taken by serving a notice thereof on the adverse party, and filing the original with proof of service indorsed thereon, and when, on account of a failure to comply with this provision of the statute, the former appeal was dismissed, it did not operate as an abandonment of the appeal, or affect the plaintiff's right to take another. The motion to dismiss must therefore be overruled.        OVERRULED.

Decided December 23, 1895.
[42 Pac. 997.]

ON THE MERITS.

Opinion by MR. JUSTICE WOLVERTON.

This is a suit by T. F. Osborn to foreclose a mechanics' lien brought to enforce payment for stone furnished for use in a building under construction by defendant Logus. The decree was against plaintiff in the court below, and he appeals. The facts sufficiently appear further on in the opinion for a full understanding of the points decided.

5. A peculiarity about this proceeding is that, according to the recital in the claim of lien, the stone was furnished to "J. W. Holm and Brother," while the complaint alleges that it was furnished to "J. O. and C. N. Holm," partners as "J. O. Holm and Brother." The original contract with Charles Logus, the owner, purports to be executed by "C. N. Holmes

and Company." It is contended by Logus that this admixture of both individual and firm names is fatal to the proceeding upon two grounds: *first,* the statute having made the contractor the agent of the owner, it is insufficient to state that the materials were furnished to "J. W. or J. O. Holm and Brother," when the only agent who had any authority to bind the owner was "C. N. Holmes and Company"; and, *second,* that the contractors "C. N. Holmes and Company," being necessary parties, should have been made defendants, and that the suit cannot proceed without them. That it is unnecessary under the statute that a judgment against the contractor should precede or be had concurrently with the decree of foreclosure against the property is settled by *Ainslie* v. *Kohn,* 16 Or. 374 (19 Pac. 97); but here the objection goes to the nonjoinder of "C. N. Holmes and Company," who it is claimed must be made parties, or else the suit must abate. Ordinarily, the objection arising from a defect of parties should be taken by demurrer if it appears upon the face of the complaint, otherwise by answer, and if by neither, it is to be deemed waived: Sections 67, 70, and 71, Hill's Code; *Cohen* v. *Ottenheimer,* 13 Or. 224 (10 Pac. 20). Unless the statute touching the foreclosure of mechanics' liens absolutely requires the presence of the contractor as a party litigant before the suit can proceed, there is no reason why the ordinary rule should not prevail here. For the purposes of the mechanics' lien act the contractor is held to be the agent of the owner. As touching suits under the act, section 3677 provides that "suits to enforce the liens created by this act shall be brought in the circuit courts, and the pleadings, process, practice, and other proceedings shall be the same as in other cases. * * * All persons personally liable, and all lienholders whose claims have

been filed for record under the provisions of section 3673, shall, and all other persons interested in the matter in controversy, or in the property sought to be charged with the lien may, be made parties; but such as are not made parties shall not be bound by such proceedings." Section 3679 provides, among other things, that "in all cases where a lien shall be filed under this act for work done or materials furnished to any contractor, he shall defend any action brought thereupon at his own expense; and during the pendency of such action, the owner may withhold from the contractor the amount of money for which such lien is filed; and in case of judgment against the owner or his property upon the lien, the said owner shall be entitled to deduct from any amount due or about to become due by him to the contractor the amount of such judgment and costs; and, if the amount of such judgment and costs shall exceed the amount due by him to the contractor, or if the owner shall have settled with the contractor in full, he shall be entitled to recover from the contractor any amount so paid by him, the said owner, in excess of the contract price, and for which the contractor was originally the party liable." The contractor being the agent of the owner, his acts may be said to be the acts of the owner, thereby establishing a privity, for the purpose of the lien, between the owner and the subcontractors, material men, and laborers; so that a direct relationship exists between the owner and the subcontractor, and it is not necessary that the contractor be present in the proceeding to supply a link to complete and establish such relationship.

Regarding section 3677 it is contended that the words "shall" and "may," when used therein with reference to parties to the suit, are used in contradis-

tinction to each other, and that therefore the word "shall" becomes mandatory, and should be interpreted to mean "must." The use of both words in the same provision may afford a very forcible indication of the intention of the legislature (Sutherland on Statutory Construction, § 462); but the mere circumstance of such use does not alone determine their proper signification. That must yet be determined as the legislative meaning of other words are determined, and by like rules of interpretation. The section at the outset declares that the "pleadings, process, practice, and all other proceedings shall be the same as in other cases," and in the latter clause "the proceedings * * * shall be as nearly as possible made to conform to the proceedings of a foreclosure of a mortgage lien upon real property." From these clauses it becomes apparent that the legislature intended to conform the practice and procedure in the foreclosure of mechanics' liens to the practice and procedure "in other cases," or as nearly as possible in the "foreclosure of a mortgage lien upon real property." Now, it is well understood what is meant by necessary and what by proper parties in ordinary cases, or in a suit to foreclose a mortgage upon real estate. "A necessary party is one whose presence before the court is indispensable to the rendering of a judgment which shall have any effect upon the property; without whom the court might properly refuse to proceed, because its decree would be practically nugatory": 2 Jones on Mortgages, § 1394. Such a person, in this sense, is the owner of the equity of redemption. Subsequent incumbrancers are also regarded as necessary parties, because a perfect title could not be given under the decree and sale; but the presence of such incumbrancers is not indispensable to the decree

of foreclosure, it may be given and rendered without them, but such as are not made parties are not cut off or bound by the decree. See 2 Jones on Mortgages, § 1394. Section 415, Hill's Code, regulating suits for the foreclosure of real estate mortgages, provides that "Any person having a lien subsequent to the plaintiff * * * shall be made a defendant in the suit, and any person having a prior lien may be made defendant at the option of the plaintiff, or by the order of the court when deemed necessary." No one will contend, under this statute, that without the presence of a subsequent lienor as a party defendant, the suit could not proceed.* The decree without him is not binding so far as he is concerned. But a purchaser under such a decree may insist upon a redemption by the lienor not made a party, failing in which such lienor will be thenceforth barred of all interest in the premises: *Sellwood* v. *Gray,* 11 Or. 534 (5 Pac. 196). A person having a prior lien, but not a necessary party in either sense, may be brought in by order of the court. Now the result of all this is that the owner of the equity of redemption is an indispensable party, and without him the suit cannot proceed. Subsequent lienors are considered necessary parties, but their absence from the record does not perforce of that fact render the proceeding a nullity; but interested parties may require that they be brought in for their protection, and proper parties may be brought in if deemed necessary. Section 3677 should be construed in the light of this practice. The owner, of course, is an indispensable party, and his absence would be fatal to the proceeding; a decree without him would be a nullity.

*For an example of such a proceeding see *Morrell* v. *Miller,* 28 Or. *post,* where one Fowler, a subsequent mortgagee, was not a party.— REPORTER.

Persons personally liable and all lienholders are necessary parties in the sense that interested parties may require that they be brought in, so that the whole controversy may be concluded by one proceeding. This, however, should be taken with a word of explanation. If persons only personally liable have absconded, or are nonresidents and beyond the jurisdiction of the court, so that a valid personal judgment cannot be obtained against them, the statute not having provided for substituted service, the proceeding will not abate by reason of the fact that they cannot be brought in. The object of the statute was to give an effective remedy against the property, and the legislature did not intend to put it within the power of any person to defeat it. Hence the absence beyond the jurisdiction of the court of one personally liable cannot defeat the lien. "All other persons interested in the matter in controversy" may be brought in if deemed necessary. One salient circumstance which reenforces this construction of said section is that the owner comes under the category of parties whom the statute says may be made parties, but he is undoubtedly an indispensable party, and no valid decree could be established without him. The intention of the statute was to designate such parties as are necessary and proper for a complete determination of matters pertaining and incident to the foreclosure of the lien, and no particular importance should be given to the auxiliaries "shall" and "may," except perhaps to distinguish between necessary and proper parties. But it is claimed that the provisions of section 3679 requiring the contractor to defend any suit brought to enforce the lien is in itself a stronger reason why the suit should not proceed without his presence as a party litigant. In construing a similar statute, ADAMS, J., in

*Horsthotte* v. *Menier,* 50 Mo. 160, makes the following pertinent observations, which are alike applicable here: "When an owner of property contracts with a responsible party to furnish all materials and erect for him a building, under this section he has the right to look to such contractor for protection against all liens by material men and subcontractors. That, to my mind, was the evident intention of the legislature. If the original contractor was not made a party, he would not be bound by the judgment; whereas, if he was a party, he would be estopped from disputing the amount of recovery as between himself and the owner. ⁎ ⁎ ⁎ What we now hold is that the original contractor ought to be brought before the court as a codefendant, for the purpose of protecting his own rights and those of the owner. But if he is not brought before the court at the proper time, the judgment will not for this omission be irregular or void. The objection should have been taken by the owner by demurrer or answer. If he fails to demur when the defect appears on the petition, or fails to set up the nonjoinder by answer, when it does not appear on the face of the petition, he will be presumed to have waived the objection: Wagner's Statutes, 1014, 1015, §§ 6, 10. The defect of parties cannot be reached by way of instruction." Nor can it be reached when mooted here or at the trial for the first time.

6. This opinion has proceeded thus far upon the assumption that "J. O. Holm and Brother" were not the contractors, and hence that the contractors were not made parties at all. The case can be no stronger if they were wrongly named as defendants. We will now recur to the first contention, as this disposes of the second. The contract with the owner having been

executed under the firm name of "C. N. Holmes and Company," is it sufficient to state in the complaint that the materials were furnished to J. O. and C. N. Holm, partners doing business under the firm name of "J. O. Holm and Brother," contractors for the furnishing of materials and erection of the building? It appears from the testimony that there were two parties interested as contractors for the stonework of the building erected for Logus. One of these parties styled himself "C. N. Holmes," as is shown by his orders placed with Osborn for stone, and the other styled himself "J. O. Holm," as is shown by his indorsement upon a certificate issued by Stranahan and Dupay, the architects, to "C. N. Holmes and Company," and directed to Charles Logus, August ninth, eighteen hundred and ninety-two. It further appears that these two parties were brothers, although their surnames are not the same. The written contract with Logus for the stonework is subscribed "C. N. Holmes and Company." F. L. Logan, who was looking after Logus' interests during the construction of the building, and was a witness in his behalf, says "J. O. Holm" was the "Company" of "C. N. Holmes and Company," and that he had heard one of them speak of the other as his brother. This and other testimony leaves no doubt that these parties were associated in business for the purposes of this contract at least, but there is no evidence of a general copartnership existing between them. One of the parties has styled the firm "C. N. Holmes and Company." Other parties dealt with these persons with reference to the same contract for stonework under different firm names. Reifschneider and Kenner dealt with them as "Holmes Brothers," Nottingham and Company, as "Holm Brothers," and the plaintiff as "J. W. Holm

and Brother"; so that it is very difficult to determine by what firm name the association of these brothers for this particular venture should be styled or designated. But, however this may all be, it is clearly apparent that defendant Logus, who alone is contesting this appeal, has not been misled to his injury in any respect by the allegations in the complaint touching these parties or their firm name, and we are therefore not inclined to hold that there is such a disagreement between the proofs and the allegations as to constitute a variance fatal to plaintiff's case.

7. Closely connected with this objection is another, which goes to the sufficiency of the claim of lien set out in the complaint, because of the fact that the parties to whom the stone was furnished are therein named as "J. W. Holm and Brother." Here, again, it is not apparent that the defendant Logus has been misled to his injury, which is a strong circumstance going to the maintenance of the lien. In *Putnam* v. *Ross*, 46 Mo. 337, the contractors were named in the claim of lien as Ross and Shane, whereas Ross alone, the former partner of Shane, was the contractor. Shane had no interest in the transaction. The court, in discussing that branch of the case, said: "The plaintiffs * * * failed to state with precision who was their debtor, giving the name of a business firm, instead of the name of the party who had been the senior member of that firm. He gave the name of his real debtor, but erroneously coupled with it the name of a third party who was not liable. Were the defendants misled to their injury by this mistake? If so, they ought not to suffer in consequence of the plaintiff's inadvertence. But there is no probability that they were harmed by the error. At all events,

it is not to be so presumed in the absence of evidence. If the error wrought the defendants any harm, it cannot be difficult for them to show it; but they aver nothing and prove nothing in that direction. Their objections rest on purely technical and over-critical grounds." So in *Tibbetts* v. *Moore*, 23 Cal. 208, a notice which stated that materials had been furnished to "Moore and Company" was held sufficient, although they were in fact furnished to Moore alone. See, also, *Steinmann* v. *Strimple*, 29 Mo. App. 485, and *Jewell* v. *McKay*, 82 Cal. 144 (23 Pac. 139). The name "J. W. Holm and Brother" was evidently placed in the claim of lien in good faith by Osborn. The account was kept with the contractors under that name. The plaintiff, testifying as to the firm name, says: "I started furnishing them lime on the building. I had the name J. N. Holm. Jim, as he was called, when I was writing the firm name, said, 'That is not right; it should be J. W. Holm,' and I said, 'What is the name of the firm?' and he said, 'J. W. Holm and Brother.' He corrected me at the time, right there." And J. W. Moore, who was in the employ of Osborn, testified in substance that both these brothers gave them the firm name as "J. W. Holm and Brother." The name thus given went upon Mr. Osborn's books and into the claim of lien. The lien claimant having acted in entire good faith in filing his lien, it ought to be clearly manifest that parties have been misled to their injury before a slight misnomer of the contractors' firm name should be allowed to defeat the lien. The last objection is not well taken.

8. It is next contended by defendant that the claim of lien does not state the contractual relations existing between the claimant and the owner, and is,

therefore, void. The claim of lien is in the following language, omitting the verification: "Know all men by these presents: that T. F. Osborn is entitled to a lien on the following described premises, by virtue of an express contract heretofore made with J. W. Holm and Brother for the furnishing of materials to be used in the erection of a certain hotel building, constructed and being upon the following described land, to wit: The southeast quarter of block one hundred and one, in the original townsite of East Portland, being at the northwest corner of East Fifth and East Washington Streets, in the City of Portland. The said materials were furnished to said J. W. Holm and Brother. That Charles Logus is the reputed owner of said land and building, and that J. F. Stranahan is architect of said building. That the contract and reasonable price of such materials so furnished was the sum of one thousand one hundred and eighty-two and thirty-four hundredths dollars lawful money of the United States. That the sum of one thousand and ninety-five and nine hundredths dollars is due, said claim and account being hereinafter specifically stated. Said materials were stone used in said building. That it is the intention of the said T. F. Osborn to hold a lien upon the premises hereinbefore described, and that it his intention to claim and hold such lien, not only upon the said buildings, erections, and superstructures, but also upon the land upon which the same are constructed, together with a convenient space around the same as may be required for the convenient use and occupation thereof. That the following is a true and correct statement of the account and demand due the claimant herein, after deducting all just credits and offsets:—

"For materials furnished June 24th to August
   12, 1892 _____$ 1,182 34

"DEDUCTIONS.

"Cash paid July 28th_____$31 10
"Cash paid August 2d_____ 56 15

   "Total amount of deductions_____     087 25

"Balance now due_____     $ 1,095 09

"That thirty days have not elapsed since the completion of the said building or since the said materials were furnished.             T. F. OSBORN."

The view we have taken of this question requires a review to some extent of some former decisions of this court wherein it has received consideration: *Rankin* v. *Malarkey,* 23 Or. 593, (32 Pac. 620, 34 Pac. 816,) is the first case touching upon the subject. It was there held that "the statement should show a *prima facie* right of lien. It, therefore, must connect the claimant with the owner of the lot or building against which it is sought to enforce the lien, either by showing that the claimant contracted with the owner or his agent, or that he furnished materials to one who was erecting a building under a contract, or with the owner's consent." Citing Jones on Liens, § 1392, and *Anderson* v. *Knudson,* 33 Minn. 172. But, upon a rehearing, the case was disposed of upon entirely different grounds, thus rendering the question immaterial in determining the controversy. In *Curtis* v. *Sestanovich,* 26 Or. 107, (37 Pac. 67,) the next case in which the question was discussed, it was held that "the contractual relation existing between the owner of the building and the person having charge of the construction thereof should be stated in the notice, when the labor has been done

or the materials have been furnished at the instance of any other person than the owner," citing *Warren* v. *Quade,* 3 Wash. St. 750, (29 Pac. 827,) and *Heald* v. *Hodder,* 5 Wash. St. 677, (32 Pac. 728,) in addition to the authorities cited in *Rankin* v. *Malarkey*. This case appears to have been concurred in by the full bench. But here the claim of lien met the objection upon its face, and it was still unnecessary to a final disposition of the case to decide the question as a legal proposition. The next and last case is *Willamette Lumbering Company* v. *McLeod,* 27 Or. 272 (40 Pac. 93). Here the same question was made, but the claim of lien itself again answered the objection, and it was so held. However, the opinion of the court does not announce as a proposition of law that such contractual relation should be so stated. BEAN, C. J., dissented from this opinion in so far as it assumed that the claim of lien must upon its face show the contractual relation. The writer hereof was of the same opinion, but did not formally dissent, because there was no discussion or holding upon the question except to declare that the lien was sufficient to meet the objection. These are all the cases which touch upon the subject, and it is not believed the question has become *stare decisis* by reason thereof. We will, therefore, consider it as one of first impression.

Section 3669 of Hill's Code provides that any person furnishing material to be used in the construction, alteration, etc., of any building, etc., shall have a lien upon the same for labor done or material furnished "at the instance" of the owner of the building or his agent; "and every contractor, subcontractor, architect, builder, or person having charge of the construction, alteration, or repair, in whole or in part, of any building or other improvement as aforesaid, shall be held

to be the agent of the owner for the purposes of this act." Section 3673 prescribes the manner of perfecting the lien, and the requisites of the claim of lien itself. It must contain "a true statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed, or to whom he furnished the materials, and also a description of the property to be charged with said lien, sufficient for identification." The claim should substantially state everything required by the statute before it can become effective as a lien: *Rankin* v. *Malarkey,* 23 Or. 597 (32 Pac. 620, 34 Pac. 816); *Gordon* v. *Deal,* 23 Or. 155 (31 Pac. 287); *Pilz* v. *Killingsworth,* 20 Or. 435 (26 Pac. 305); *Allen* v. *Rowe,* 19 Or. 190 (23 Pac. 901). By section 3669 the lien law may be invoked when the labor is performed or the materials are furnished to be used in the building at the instance of the owner or his agent, and it is enacted that the contractor or other person named in the statute shall be held to be the agent of the owner. So that furnishing materials to the contractor is, in effect, furnishing them to the owner; in other words, the material man is dealing with the owner through his agent. This must necessarily be so if we give to the rules of law touching principal and agent their ordinary signification in this connection, and there exists no reason why we should not: *Cross* v. *Tscharnig,* 27 Or. 49 (39 Pac. 540). Here then the statute itself has established a direct contractual relation between the material man and the owner. This being so it aids us very materially in the construction of that clause of section 3673 which prescribes what the claim of lien shall contain. Among other things, it shall contain "the name of the person * * * to whom

he furnished the materials." If the person named in the claim of lien is the contractor, or one of either of the other classes of individuals designated, then the owner's agent is named, and this appears to be all that is required by the statute. There is nothing in this language, nor is there anything in the section to which it belongs, which requires that the contractual relations existing between the lien claimant and the owner shall be stated. A literal or even a liberal construction of the section standing alone can by no stretch of the rules of interpretation embrace such a requirement. But if this section is construed *in pari materia* with section 3669, as it ought to be, then the statutory intendment would seem to be against the interpretation contended for, since we have seen the statute itself has established the contractual relations, and the claim of lien could hardly be made stronger by containing a reiteration of what the law itself has established, and we believe that it was not intended by the legislature that such relations should be stated therein. The object of the statute is to provide a ready and available means whereby contractors, subcontractors, and material men may secure themselves for labor done or materials furnished in the construction and repair of buildings and other structures, and at the same time to furnish the owner with reasonable notice so that he may deal with contractors to whom he is personally liable accordingly. Whether the person for whom the labor is done or to whom the materials are furnished was an agent under the statute, or had authority to bind the owner, and entitle the laborer or material man to a lien, is a matter of pleading and proof at the trial. As sustaining this interpretation see *Lumber Company* v. *Gottschalk,* 81 Cal. 641; *Hurlbert* v. *New Ulm Basket Works,* 47 Minn. 81 (49

N. W. 521); *Post* v. *Miles,* 34 Pac. 586; *Hauptman* v. *Catlin,* 20 N. Y. 247, which are decisions construing similar statutes.   Jones on Liens, asserts a contrary doctrine. He says, in effect, that the statement should show a *prima facie* right of lien, and therefore must connect the claimant with the owner by showing that the claimant contracted with the owner or his agent, or that he furnished materials or labor to one who was erecting a building or other improvement under such a contract, or with the owner's consent.  The citations in support of the text would indicate however that the doctrine here announced was the outgrowth of the earlier Minnesota cases which were based upon a statute containing a form that might be used in perfecting the lien.   MITCHELL, J., in *Keller* v. *Houlihan,* 32 Minn. 486, (21 N. W. 729,) says: "An examination of this form will show that it required a statement (in brief, and not with the fulness, perhaps, required in a pleading) of every fact necessary to entitle the party to the lien which he claimed, including that of a contract with the owner."   Citing *Clark* v. *Schatz,* 24 Minn. 300. And these cases were followed in *Anderson* v. *Knudson,* 33 Minn. 132.   But the court in *Hurlbert* v. *New Ulm Basket Works,* 47 Minn. 81, holding under a statute which had dispensed with the form, declares: "It was competent for the legislature to dispense with the necessity of embracing such a statement in the lien notice, as it did do when, in prescribing particularly what the notice should contain, it did not include any provision as to a statement of the contract relations of the lien claimant with the owner of the property." So that Jones on Liens has lost much of its weight as an authority in point.   *Warren* v. *Quade,* 3 Wash. St. 750, and *Heald* v. *Hodder,* 5 Wash. St. 677, are, however,

28 OR.—23.

strong authorities in support of the doctrine as laid down by Jones on Liens, and cannot well be distin- guished from the case at bar, but the reasoning upon which they are based does not so well satisfy us as that employed in the cases above cited from Califor- nia, Minnesota, and New Mexico.  We are constrained to hold, therefore, that plaintiff's claim of lien is valid and sufficient, and the decree will be reversed, and one entered here that the lien be foreclosed and the property sold to satisfy the plaintiff's claim and interest, together with one hundred and twenty-five dollars attorney's fees and the further sum of four dollars, the expense of recording the lien.

REVERSED.

Argued April 16; decided November 4, 1895; rehearing denied.